UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

FILED
SEP 30 2009
STEPHANIE J. EDMONDSON, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NC

| | |
|---|---|
| IN RE: | CASE NO.: 09-01032-8-JRL |
| GARY KEVIN COATS, | CHAPTER: 7 |
| Debtor. | ADVERSARY PROCEEDING NO.: 09-00194-8-JRL |
| DAVID M. WARREN, TRUSTEE IN BANKRUPTCY FOR GARY KEVIN COATS, ) ) ) | |
| Plaintiff, ) ) | |
| V. ) ) | **ANSWER** |
| GARY KEVIN COATS and ROI PARKER, ) ) ) | |
| Defendants. ) | |

Defendant Gary Kevin Coats hereby answers the Adversary Proceeding and Amended Complaint of the Plaintiff and alleges and says:

1. Admitted upon information and belief.

2. Admitted upon information and belief.

3. Admitted upon information and belief.

4. Denied. The Trustee never asked Gary Kevin Coats for a listing of the tax value of the properties owned by Gary Kevin Coats at the time of the filing of the Bankruptcy petition. The valuation of $550,000 listed in Gary Kevin Coats' bankruptcy schedules was made on the basis of an analysis of the market value of the unit at the time. Market value is distinguishable from tax market. Market value is derived by comparing among other things the condition location and size of the subject property to the condition, location, size, and other factors of comparable

properties that have recently sold or gone under contract. Using the market value approach, Gary Kevin Coats considered the fact that one three-bedroom unit (Dawson #310) had been on the market and could not sell at a listing price $519,000; considered the fact that another three-bedroom unit (Dawson #500), which was the same floor plan as the unit owned by Gary Kevin Coats, had been on the market for more than 6 months at an asking price of $649,900 and could not sell; considered the fact that Gary Kevin Coats' Dawson condo #512 had been on the market for more than 200 days at a listing price of $659,900 prior to the filing of the bankruptcy petition and could not sell; considered the fact that there was essentially little to no traffic on condos in the downtown Raleigh area at the time selling over $500,000; and all of those facts were taken into account by Gary Kevin Coats and adjustments were made based on the foregoing evidence including square footage, lack of any comparable selling, condition and location of the subject unit and all of that evidence led Gary Kevin Coats to believe the market value of the condo was in around $550,000. The outstanding liens on the property at the time of the filing of the bankruptcy petition including late charges, interest, and penalties, unpaid taxes and HOA fees, amounted to a total of approximately $670,000. Based on the fact that the Gary Kevin Coats' unit had not generated any interest while on the market for $659,900, the logical conclusion was drawn that the unit was overpriced and over valued at the listing price.

5.  Denied.
6.  Denied.
7.  Denied.
8.  Denied.
9.  Denied.
10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied. Gary Kevin Coats did receive an email from Colleen Hines of Smith Debnam Law Firm which contained information from attorney Thurston Debnam. Gary Kevin Coats responded to Colleen Hines with a copy of the email to attorney Thurston Debnam to make very clear that Gary Kevin Coats was not attempting or intending to commit any type of bankruptcy fraud and to tell attorney Thurston Debnam to do whatever was needed to be done to get the transaction closed. Gary Kevin Coats further cooperated with the closing attorney by providing information related to the mortgagee and payoff information including account numbers, contact information and people, etc. Gary Kevin Coats further cooperated with the closing attorney by delivering to the closing attorney's office upon receiving a request from Colleen Hines all of the original keys, key fobs, and key cards that were in the possession of Gary Kevin Coats so that the buyers of the property would have immediate access after closing. At no time was Gary Kevin Coats unresponsive to the requests of the closing attorney or staff.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied. Defendant Gary Kevin Coats' denial of paragraph 47 shall include some important background information related to the initiation of the offer by Andersen's clients. Gary Kevin Coats had been in contact with Ann-Cabell Baum Andersen by phone and email related to the potential sale of Dawson Condo #512 prior to the filing of the bankruptcy petition and continuing thereafter, only after having been contacted directly by phone by Ann-Cabell Baum Andersen to communicate to Gary Kevin Coats that Ann-Cabell Baum Andersen represented clients who were interested in the Dawson Condo #512. Gary Kevin Coats disclosed to Ann-Cabell Baum Andersen that the unit was under the protections of the Bankruptcy Court and advised there was a Trustee involved in making material decisions about property owned by Gary Kevin Coats. Andersen admitted that she knew, but she should not have known because of an improper disclosure by her source, that the unit was under the protections of the Bankruptcy Court. Ann-Cabell Baum Andersen further indicated that she wanted to keep Gary Kevin Coats included in the deal in the event the Bankruptcy did not "go through." Gary Kevin Coats advised Ann-Cabell Baum Andersen that she would be able to show the unit to her buyers and if they were interested in the property to contact Gary Kevin Coats and there would be a future discussion about how to proceed. Gary Kevin Coats further advised Ann-Cabell Baum Andersen that any transaction that involved Gary Kevin Coats would be by means of the buyers accepting the property in its as-is condition, meaning should there be any repair requests, they should come in the form of an itemization to the offer as any repair negotiations would be unavailable once a deal had been reached. Ann-Cabell Baum Andersen, with knowledge of the

bankruptcy status of the condo, communicated further with Gary Kevin Coats to arrange a showing of the property to her clients and afterwards further discussion of the process by which a deal might be made. Gary Kevin Coats informed Ann-Cabell Baum Andersen that any offer would be presented to the Trustee for acceptance or rejection or negotiation. Ann-Cabell Baum Andersen stated that she would deal with the Trustee through various means but her particular concern was with dealing with Gary Kevin Coats in the event the bankruptcy case was denied. Essentially, Ann-Cabell Baum Andersen wanted there to be 2 transactional contracts as a protection for her buyers as she described it to Gary Kevin Coats in the event the bankruptcy did not go through. Furthermore, Gary Kevin Coats told Ann-Cabell Baum Andersen that she would be required to first work with the Trustee related to any possible deal on a sale of the condo. Ann-Cabell Baum Andersen maintained her desire to work with all parties to ensure a final deal. Ann-Cabell Baum Andersen prepared and presented to Gary Kevin Coats a verbal offer from her clients who were identified as Wes and Judy Proctor for $720,000. Gary Kevin Coats told Ann-Cabell Baum Andersen the price would be acceptable to Gary Kevin Coats however as long as the bankruptcy case continued, the Trustee would make a final determination of selling price, terms, contract language, etc. Ann-Cabell Baum Andersen asked Gary Kevin Coats for a written confirmation that $720,000 was an acceptable price by means of a statement of intent to sell and such statement was prepared and presented to Ann-Cabell Baum Andersen. Thereafter, a written offer was presented in person to Gary Kevin Coats by Ann-Cabell Baum Andersen. The terms of the offer were different than those previously discussed by the Gary Kevin Coats and Ann-Cabell Baum Andersen. Gary Kevin Coats again expressed to Ann-Cabell Baum Andersen the need for her to include the Trustee in these discussions. And again Ann-Cabell Baum Andersen expressed her intention to involved Gary Kevin Coats only as a recourse in the event the property

was no longer protected by the provisions of the Bankruptcy Court. Days later, another written offer was prepared by Ann-Cabell Baum Andersen and presented to Gary Kevin Coats which did included the Trustee as the seller. Ann-Cabell Baum Andersen advised Gary Kevin Coats that the buyer's had inspected the unit and that there were several repairs issues found. Gary Kevin Coats asked Ann-Cabell Baum Andersen to send the report over as the contract did mention particular repair issues. At the request of the buyers through Ann-Cabell Baum Andersen, Gary Kevin Coats did undertake time and his own personal money to improve the condition of the condo so that the buyer's would be accepting of its condition and be prepared to close on the unit. There came a time when Gary Kevin Coats was informed by the Court and Counsel that there was a deal made between Ann-Cabell Baum Andersen's clients and the Trustee and that the property was to be sold after Court approval. Further communication revealed that Ann-Cabell Baum Andersen had in fact made no communication with the Trustee at which point Gary Kevin Coats became more involved in the transaction as a means of attempting to identify any problems that existed and facilitate the closing of the transaction.

48.   Denied.

49.   Admitted.

50.   Denied.

51.   Denied. Gary Kevin Coats denies authorship of a portion of the statements attributed to him in this exhibit reference.

52.   Denied.

53.   Denied. Gary Kevin Coats denies authorship of this email exhibit reference.

54.   Denied.

55. Denied. In responding to the specific allegations of the email, Gary Kevin Coats says:

   A. There is no "commercial note" on the property;

   B. Gary Kevin Coats is familiar with the practice of real estate in NC, having been licensed for nearly 10 years;

   C. Gary Kevin Coats is familiar with the responsibilities and burdens and duties placed on those entrusted with the protection of earnest money deposits;

   D. The Proctor family can NOT claim any fraud associated with the removal of the appliances. The initial offer drawn up by Ann-Cabell Baum Andersen and signed by the buyers clearly expresses that no appliance exist in the unit other than a hood vent and warming appliance. In fact, there were no appliances in the unit at the time the Proctors saw the unit the first time. All appliances were removed prior to the filing of the bankruptcy petition. Any claim otherwise is fraudulent.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied. Prior allegations by the buyers have been factually and substantively denied.

65. Denied. Reference should be made to the Debtor's answer for Paragraph 55 above and is incorporated herein.

## FIRST CAUSE OF ACTION AGAINST THE DEBTOR

66. Defendant Gary Kevin Coats incorporates his responses contained in the preceding paragraphs as if fully set out herein.

67. Denied. The Trustee's allegations are unfounded and should be dismissed.

## SECOND CAUSE OF ACTION AGAINST THE DEBTOR

68. Defendant Gary Kevin Coats incorporates his responses contained in the preceding paragraphs as if fully set out herein.

69. Denied. The Trustee's allegations are unfounded and should be dismissed.

## THIRD CAUSE OF ACTION AGAINST THE DEBTOR

70. Defendant Gary Kevin Coats incorporates his responses contained in the preceding paragraphs as if fully set out herein.

71. Denied. The Trustee's allegations are unfounded and should be dismissed.

## FOURTH CAUSE OF ACTION AGAINST DEBTOR AND PARKER

72. Defendant Gary Kevin Coats incorporates his responses contained in the preceding paragraphs as if fully set out herein.

73. Denied.

## FIFTH CAUSE OF ACTION AGAINST DEBTOR AND PARKER

74. Defendant Gary Kevin Coats incorporates his responses contained in the preceding

paragraphs as if fully set out herein.

75.   Denied.


## SIXTH CAUSE OF ACTION AGAINST DEBTOR AND PARKER

76.   Defendant Gary Kevin Coats incorporates his responses contained in the preceding paragraphs as if fully set out herein.

77.   Denied.


## FIRST COUNTERCLAIM
(Common Law Fraudulent Misrepresentation Against Trustee David M. Warren)

78.   At all times has Gary Kevin Coats cooperated with Trustee David M. Warren concerning the production of documentation and provision of assets and explanation of money and property transfer at every request of the Trustee;

79.   In light of Gary Kevin Coats' numerous emails with and phone calls with Ann-Cabell Baum Andersen and the Trustee's refusal to include Ann-Cabell Baum Andersen in this Adversary Proceeding, Plaintiff's omissions are reasonably calculated to decieve and made with the intent to deceive Gary Kevin Coats;

80.   Plaintiff, as Trustee in Debtor's Bankruptcy petition has an obligation to pursue any possible involvement in any alleged fraud by any third party and Plaintiff's refusal to include Ann-Cabell Baum Andersen is a reasonable calculation on the part of the Plaintiff to seek to ensure that there is a denial of discharge for the Debtor, to the exclusion of acknowledging there are factual errors in many exhibits attached to the Amended Adversary Proceeding;

81.   Gary Kevin Coats has in fact been deceived by Plaintiff's misrepresentations in that

Plaintiff made no attempt to collect factual information from the Debtor or others relevant to the allegations being made in Adversary Proceeding before the filing;

82. As a direct and proximate result of Plaintiff's fraudulent misrepresentations and omissions, Gary Kevin Coats has been damaged in an amount in excess of $10,000 (TEN THOUSAND DOLLARS AND 00/100).

### SECOND COUNTERCLAIM
(Punitive Damages)

83. All of the allegations contained in the preceding paragraphs of this Counterclaim are incorporated as if fully rewritten herein.

84. Plaintiff's acts and omissions were reasonably calculated and made with the intent to deceive Gary Kevin Coats and he was in fact deceived by Plaintiff.

85. Due to Plaintiff's fraudulent conduct, Gary Kevin Coats is entitled to punitive damages in the amount of $2,000,000.

WHEREFORE, the Defendant prays of the Court as follows:

1. That Plaintiff have and recover nothing of Defendant Gary Kevin Coats' and that Plaintiff's Adversary Proceeding be dismissed against Gary Kevin Coats;

2. That the costs of this action are taxed against Plaintiff;

3. That Gary Kevin Coats be awarded monetary damages in an amount that will be proven at trial;

4. That such damages be trebled pursuant to Chapter 1D of the N. C. G. S;

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted this the 29th day of September, 2009.

By: _____
Gary Kevin Coats,
Pro Se Defendant
3753 Blue Ridge Road,
Raleigh, NC 27612
Phone: (919) 389-7373

CERTIFICATE OF SERVICE

I, Gary Kevin Coats, certify under penalty of perjury that I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age and that on __9/29/09__, I served a copy of the Answer, by first-class mail, postage prepaid, upon the following parties:

Clerk of Bankruptcy Court
P. O. Box 1441,
Raleigh, NC 27602-1441

Roi Parker
P. O. Box 12183,
Raleigh, NC 27605

David M. Warren
P. O. Box 1801,
Raleigh, NC 27602

_/s/ Gary Kevin Coats_
Gary Kevin Coats