

**SO ORDERED.**

**SIGNED this 07 day of July, 2010.**

_____
Stephani W. Humrickhouse
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                            CASE NO.

**GARY KEVIN COATS**                              **09-01032-8-SWH**

     **DEBTOR**


**DAVID M. WARREN, TRUSTEE**

     **Plaintiff**                          **ADVERSARY PROCEEDING NO.**

     **v.**                                **09-00194-8-SWH-AP**

**GARY KEVIN COATS and ROI PARKER**

     **Defendants.**

### MEMORANDUM OPINION

The trial of this adversary proceeding, brought by the chapter 7 trustee seeking to deny the debtor's discharge pursuant to 11 U.S.C.§ 727(a) and the assessment of damages, was held in Raleigh, North Carolina, on June 9, 2010. For the reasons that follow, the debtor's discharge will be denied and both compensatory and punitive damages will be assessed.

Jurisdiction

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(J), which this court may hear and determine.

Background

Gary Kevin Coats filed a petition for relief under chapter 7 of the Bankruptcy Code on February 10, 2009. On September 8, 2009, David M. Warren, the chapter 7 trustee, filed the complaint in this adversary proceeding, objecting to discharge and seeking damages from the debtor and defendant Roi Parker. Specifically, the trustee requests that the court deny discharge pursuant to 11 U.S.C. §§ 727(a)(2), (4), and (6) for alleged fraudulent activity in connection with the sale of the debtor's condominium, and seeks actual damages and treble or punitive damages. Mr. Coats initially denied the trustee's allegations, appearing without the assistance of counsel, but has recently obtained representation and stipulated to the trustee's allegations, which the court will briefly summarize below.

Mr. Coats is a licensed real estate agent and is in the business of buying and selling real estate through his company, Featured Properties, LLC. Among the assets listed in his schedules is a condominium at 317 W. Morgan Street, Raleigh (the "Condo"), which Mr. Coats indicated his intent to surrender. The value of the Condo was scheduled as $550,000, subject to a secured claim of $634,258.[1] In March,2009, Mr. Coats was contacted by a real estate agent whom he knew at the

---

[1] The Condo's tax value, $725,397, was not disclosed in the petition.

Glenwood Agency, Ann-Cabell Baum Anderson, with an offer from Charles and Judith Proctor to purchase the Condo.  Rather than directing Anderson to contact the chapter 7 trustee on account of his pending bankruptcy case, Coats negotiated a contract for the sale of the Condo to the Proctors as if he were simply a seller representing himself.  Coats planned to split the commission with Anderson.

In the meantime, in April 2009, the chapter 7 trustee received a telephone call from an individual identifying himself as a real estate agent named Roi Parker, with potential purchasers for the Condo.  It was later determined that an individual named Roi Parker was a roommate of Mr. Coats, although Mr. Parker is not a real estate agent.  Unbeknownst to the trustee, this call was actually placed by the debtor himself, Mr. Coats, pretending to be "Roi Parker."  The trustee then received a written offer to purchase the Condo from "Roi Parker"  as "selling agent" with the Glenwood Agency, which purported to be signed by prospective buyers Charles and Judith Proctor. This offer, however, was actually prepared and presented by Mr. Coats, and neither Coats nor Parker is associated with the Glenwood Agency.  The offer was accompanied by a fee agreement that provided for a commission of 2.4% of the sale price to "Roi Parker" for brokering the deal.

Coats, pretending to be Parker, then engaged in negotiations with the trustee, primarily through email communications using email addresses containing the name "Roi Parker." Eventually the trustee and "Parker" (Coats) arrived at a deal, prompting the trustee to seek court approval to sell the Condo to the Proctors for $725,000, with a commission to "Parker" (Coats) of $17,400, representing 2.4% of the purchase price.  The deal took a dramatic turn, however, when the debtor amended his exemptions and the trustee discovered a lien on the Condo, both of which negatively affected the amount of proceeds payable to the estate.  When the trustee sought to renegotiate the

deal to preserve the net benefit to the estate, Coats, pretending to be Parker, became angry and accused the trustee of extortion.  The trustee then contacted the closing attorney to discuss the impact of the changed exemptions and learned that Coats had entered into a side agreement with the Proctors.  This side agreement provided that the Proctors would pay the sum of $17,400 to the Glenwood Agency, to be shared with Mr. Coats through Featured Properties, LLC, as an additional brokerage fee "outside of closing."  This amount would not be credited toward the selling price of the property.  The agreement further stated that it would be confidential and that all communications with trustee would be handled by Mr. Coats.  The closing attorney explained to the trustee that he had advised the Proctors not to pay these additional funds, as the side agreement was not signed by the trustee and,  therefore, was not part of the binding sales contract.

Discovering the side agreement prompted the trustee to speak with Anderson, given that her name appeared on the agreement as agent for the Proctors.  Through discussions with Anderson, the trustee learned that the Glenwood Agency did not have an agent named "Roi Parker."  Anderson then sent a cease and desist letter to "Roi Parker" regarding his false association with the Glenwood Agency, with copy to the trustee and the North Carolina Real Estate Commission.  Soon after, Anderson received a response via email from "Stephen Rhudy," using a generic email address containing the term "lien lawyer," and purporting to be counsel for Roi Parker.  In the email, "Rhudy" acknowledged Anderson's representation that "Parker" had held himself out as an agent of the Glenwood Agency, but offered no explanation for this false association.  Instead, "Rhudy" claimed that the motion to sell the property contained errors and that Anderson's letter may have caused damage to Mr. Parker, Mr. Coats' discharge, and the Proctors' ability to purchase the property.  "Rhudy" claimed that he would advise Mr. Coats that if his bankruptcy discharge was

denied because of Anderson's involvement, Coats should sue Anderson for more than the amount sought to be discharged over $4,000,000, and file a complaint with the NC Real Estate Commission. After reviewing a copy of this email, the trustee contacted Stephen Rhudy, an attorney in Durham, North Carolina, and learned that Mr. Rhudy did not send the email, had never represented Coats or Roi Parker, and had a different email address than the one from which the message was sent.

In the meantime, the trustee received a letter from the Proctors indicating that during an inspection of the Condo in May, 2009, they noted that some of the appliances had been removed, and despite the contract's inclusion of fixtures, the appliances were not replaced prior to closing. The Proctors later informed the trustee that they spent over $9,000 on replacement of the appliances and repair after improper removal.

By this point, the trustee had requested from Anderson copies of all correspondence between Anderson and Coats regarding the sale of the property. An extensive investigation ensued, followed by the complaint in the present action. Recently, Mr. Coats obtained counsel for this proceeding and began to cooperate with the trustee, admitting to impersonating a real estate agent and a lawyer, and attempting to reserve a portion of the Condo sale proceeds for himself, despite his active bankruptcy case. Coats has stipulated to facts that support the trustee's allegations, but contends that the damages owed should be mitigated because he is now admitting to these actions and cooperating, thereby saving the estate costs of additional investigation. Coats further contends that he benefitted the estate by securing the sale of the Condo at a good price in the current real estate market, despite his self-dealing.

At the hearing, the trustee represented that he was prepared to dismiss the complaint as to defendant Roi Parker, based on the facts discussed above, which came to light only after the trustee's

investigation.  In support of his request that the court deny Coats' discharge, the trustee asserts the

following grounds: (1) Coats' actions in connection with the sale of the Condo, including

transferring, removing, destroying or concealing property of the estate, were made with intent to

hinder, delay or defraud the trustee as an officer of the estate, warranting denial of discharge

pursuant to 11 U.S.C. § 727(a)(2); (2) Coats knowingly and fraudulently made a false oath or

account, attempted to obtain money, property or advantage with respect to property of the estate,

warranting denial of discharge pursuant to U.S.C. § 727(a)(4); and (3) Coats has refused to obey

lawful orders of this court as those orders relate to property of the bankruptcy estate, warranting

denial of discharge pursuant to U.S.C. § 727(a)(6).  The trustee further contends that Mr. Coats'

attempt to deprive the bankruptcy estate of funds for distribution to creditors has caused the trustee

and the estate to incur significant fees and expenses, warranting actual damages and treble or

punitive damages.

Discussion

Section 727 of the Bankruptcy Code provides, in pertinent part:

(a) The court shall grant the debtor a discharge, unless–

*   *   *

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer
of the estate charged with custody of property under this title, has transferred,
removed, destroyed, mutilated, or concealed –

(A) property of the debtor, within one year before the date of filing
the petition; or
(B) property of the estate, after the date of filing the petition;

*   *   *

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(A) made a false oath or account;
(B) presented or used a false claim;

6

> > (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>
> > \*   \*   \*
>
> (6) the debtor has refused, in the case–
>
> > (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify

11 U.S.C. § 727(a).

In this case, Mr. Coats committed egregious acts of deception in an effort to secret estate property for himself, in total disregard of the inevitable detriment to the estate, the trustee, and the bankruptcy court. Although Coats now expresses remorse for his actions, it would appear that his remorse was not caused by regret for his wrongdoing, but rather regret that he was caught. Coats ignored his responsibility to allow the trustee to handle the sale of the Condo, given that it was property of the estate. He impersonated a real estate agent and a lawyer in connection with his attempt to obtain money for his personal benefit through a sale of estate property. He removed or has concealed appliances from the Condo, which were property of the estate. The list of Coats' unthinkable deceitful acts is extensive. Coats' brazen disrespect for the bankruptcy court holds far more meaning in this case than the grain of remorse that prompted him to "cooperate" with the trustee and admit his wrongdoing at a point which it had become obvious. Based on this extreme and egregious conduct, the court will deny Coats' discharge.

In support of his request for actual damages, the trustee submitted a detailed summary of the hours his office spent unraveling the chain of events surrounding the sale, which were significant in number given the unprecedented extent of Coats' outrageous conduct, as well as Coats' pro se status for a period of time. Based on the unique nature of this case, the trustee seeks compensation

at a higher "special" rate for the investigation into Coats' wrongdoing and handling the sale, and the court agrees that, under these circumstances, a more specialized effort was required to build the case and effect the sale. The court will, therefore, award the trustee the requested $39,088.82 in actual damages, representing fees and costs of the trustee and his staff in the present matter.

In addition, the trustee requests that the court either treble the amount of actual damages assessed pursuant to the Unfair and Deceptive Trade Practices Act ("UDTPA"), or assess punitive damages in addition to the actual damages. The UDTPA is intended to "provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State and [it] applies to dealings between buyers and sellers at all levels of commerce." United Virginia Bank v. Air-Lift Assocs., 79 N.C. App. 315, 320 (N.C. App. 1986). To prevail under the UDTPA, the plaintiff must show (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff. N.C. Gen. Stat. § 75-1.1 (2009). It is without question that Coats committed unfair and deceptive acts in connection with the sale of the Condo, and that these acts caused the plaintiff's injury, rendering the first and third elements satisfied.

As to the second element of a claim under the UDTPA, the statute provides that commerce "includes all business activities, however denominated." N.C. Gen. Stat. § 75-1.1(b) (2009). "'Business activities' is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." Hajmm Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 594 (N.C. 1991). The fundamental purpose of the UDTPA is to "protect

the consuming public." Skinner v. E.F. Hutton & Co., Inc., 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985) (quoting Lindner v. Durham Hosiery Mills, Inc., 761 F.2d 162, 167-68 (4th Cir. 1985)).

The UDTPA does not apply to all types of business activities, however, as the statute excludes from its scope certain professional services and advertising activities. See N.C. Gen. Stat. §§ 75-1.1(b) and (c). In addition, the N.C. Court of Appeals has held that private homeowners selling a residence are not subject to the UDTPA. Bhatti v. Buckland, 328 N.C. 240, 244 (N.C. 1991); see also Rosenthal v. Perkins, 42 N.C. App. 449 (N.C. App. 1979); Robertson v. Boyd, 88 N.C. App. 437 (N.C. App. 1988). In this case, the transaction in question, the sale of the Condo, may fall under the UDTPA if this property was simply one of the many properties that Coats bought and sold as part of his real estate business. On the other hand, if Coats used this property as his residence, it seems that the UDTPA would not apply and the plaintiff would not be entitled to treble damages. It is unclear from Coats' petition and schedules whether or not the Condo served as his residence. At the hearing, the plaintiff referred to the Condo as Coats' "home," yet asserted that the UDTPA should still apply because Coats was in the business of buying and selling real estate. Based on the uncertainty regarding whether the Condo served as Coats' residence, the court cannot make a determination as to whether the plaintiff is even eligible for treble damages under the UDTPA. Because the plaintiff also provided grounds for punitive damages, however, the court will proceed with consideration of whether punitive damages are warranted.

Punitive damages are available under North Carolina law to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts. N.C. Gen. Stat. § 1D-1; Harrell v. Bowen, 362 N.C. 142, 144-45 (2008). The following standards apply in determining whether punitive damages are appropriate:

(a)     Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:

   (1) Fraud.

   (2) Malice.

   (3) Willful or wanton conduct.

(b)     The claimant must prove the existence of an aggravating factor by clear and convincing evidence.

(c)     Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

(d)     Punitive damages shall not be awarded against a person solely for breach of contract.

N.C. Gen. Stat. § 1D-15.  When determining the amount of punitive damages to award, the trier of fact shall consider the purpose of punitive damages stated in N.C. Gen. Stat. § 1D-1 and may consider only evidence that relates to the following:

   a.     The reprehensibility of the defendant's motives and conduct.

   b.     The likelihood, at the relevant time, of serious harm.

   c.     The degree of the defendant's awareness of the probable consequences of its conduct.

   d.     The duration of the defendant's conduct.

   e.     The actual damages suffered by the claimant.

       f.      Any concealment by the defendant of the facts or consequences of its conduct.

       g.      The existence and frequency of any similar past conduct by the defendant.

       h.      Whether the defendant profited from the conduct.

       i.      The defendant's ability to pay punitive damages, as evidenced by its revenues or net worth.

N.C. Gen. Stat. § 1D-35.

The plaintiff in this case has established that Coats committed fraud, an aggravating factor, by clear and convincing evidence. Based on the particularly egregious nature of the defendant's acts, as well as the extended duration of the defendant's conduct, the court will award $10,000 in punitive damages to the trustee.

Based on the foregoing, Mr. Coats' discharge is denied pursuant to §§ 727(a)(2), (4), and (6), and the court will grant the trustee's request for actual and punitive damages. A separate judgment will be entered accordingly.

**END OF DOCUMENT**